IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DIDSTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID R. MASON ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-cv-00783 |
| ) | |
| v. ) | Judge Sharp |
| ) | Magistrate Judge Bryant |
| ) | |
| JEH JOHNSON, Secretary, Department ) | |
| of Homeland Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

By order entered August 13, 2013 (Docket Entry No. 4), this matter was referred to the undersigned for case management and to recommend ruling on any dispositive motion. Currently pending before the Court is a Motion to Dismiss brought by the Defendant, Jeh Johnson, Secretary, Department of Homeland Security (Docket Entry No. 15), to which the Plaintiff, David Mason, has responded. For the reasons stated herein, the undersigned recommends that the Defendant's Motion to Dismiss be GRANTED, and the Plaintiff's Complaint be DISMISSED.

### II. STATEMENT OF THE CASE

Plaintiff David Mason filed this *pro se* action against Defendant, the Secretary of Homeland Security, on August 7, 2013. (Docket Entry No. 1). Plaintiff, employed by TSA as a Financial Specialist, alleges in his Complaint that Defendant subjected him to employment discrimination by disciplining him in 2008 for failing to certify invoices, but

then failing to discipline another employee in 2011 for the same behavior. (Id. at 3). The factual background of this allegation, including the preceding administrative journey of the underlying complaint, is somewhat intricate due to the apparent mishandling of an earlier complaint lodged by the Plaintiff regarding the 2008 discipline. (Docket Entry No. 1-1 at 11).

According to his Complaint, Plaintiff received a Letter of Reprimand (LOR) on September 17, 2008, for failing to certify payment invoices and further failing to notify management of that situation. (Docket Entry No. 1 at 3). At that time, Plaintiff, believing this discipline to be in error and in retaliation for earlier disclosures he had made regarding suspected violations of the Anti-Deficiency Act, 31 U.S.C. § 1341, filed a complaint with the TSA Office of Inspection, in which he sought protection as a whistleblower. (Docket Entry No. 1-1 at 11). According to Plaintiff, the Office of Inspection misinterpreted his use of "ADA," assuming it to be in reference to the Americans with Disabilities Act, rather than the Anti-Deficiency Act, and accordingly forwarded the complaint to the TSA Office of Civil Rights and Liberties (OCRL). (Id.) According to the Plaintiff, though he tried to correct this error, his complaint was nonetheless processed by the OCRL until the office dismissed the complaint for (1) failure to timely contact an Equal Employment Opportunity (EEO) Counselor and (2) failure to state a claim of discrimination under the relevant regulatory provision, which does not cover the Whistleblower Protection Act. (Id. at 9-10). Though notified of his right to appeal this dismissal, Plaintiff did not pursue the action any further.[1] (Id. at 11).

---

[1] Plaintiff alleges he was "led to believe" at first that the issue "could be resolved through the OCRL," but that when he learned otherwise through the dismissal of his administrative complaint, he decided not to appeal. (Docket Entry No. 1-1 at 11).

After October 18, 2011, when Plaintiff learned that another employee had failed to certify payment invoices and notify management of the situation, but was not disciplined for the oversight, he timely contacted an EEO Counselor, filed a formal discrimination complaint, and requested a hearing before an EEOC administrative judge. (Id. at 23-24). The administrative judge dismissed the complaint for stating the same claim that had already been decided by the agency or commission, namely the Plaintiff's previous retaliation claim that he had filed in the Office of Inspection, but that ended up with the EEOC. (Id. at 1-2). The dismissal was affirmed upon Plaintiff's appeal to the EEOC. (Id. at 2). It was following this decision, at which point Plaintiff had exhausted his administrative remedies, that he timely filed his Complaint in this Court. (Id.; Docket Entry No. 1 at 1-2). Plaintiff argues that dismissal on the grounds of claim preclusion was improper, as he had alleged retaliation rather than discrimination in 2008, and explains that in his mind he had no discrimination claim at all until learning of the alleged disparate treatment in favor of another employee in 2011. (Docket Entry No. 1-1 at 6-7; Docket Entry No. 23 at 3-4).

Defendant responded to the Complaint with a Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 15). Plaintiff filed an Opposition to this Motion (Docket Entry No. 17), to which Defendant filed a Reply (Docket Entry No. 20), at which point Plaintiff filed a further Response (Docket Entry No. 23).

### III. ANALYSIS

(1) Standard of Review

Title VII of the Civil Rights Act of 1964, as amended, provides federal employees a right to *de novo* review of final agency decisions through a civil action in federal court. 42 U.S.C. § 2000e–16(c); Chandler v. Roudebush, 425 U.S. 840, 848 (1976). When considering a

3

motion to dismiss for failure to state a claim upon which relief can be granted, a court must view the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations as true. Amini v. Oberlin College, 259 F.3d 493, 497 (6th Cir. 2001). Additionally, a *pro se* complaint is "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nonetheless, "basic pleading essentials" still apply, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the complaint must contain sufficient factual allegations to raise a plausible right to relief, Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

(2) Timeliness of Title VII Complaints

As acknowledged by both parties throughout their pleadings, the EEOC requires an aggrieved federal employee to first contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory[.]" 29 CFR § 1614.105(a)(1). The Supreme Court has identified two distinctions within discrimination complaints that might affect the analysis of whether a complaint has been filed in a timely fashion: disparate treatment claims versus disparate impact claims, Lewis v. City of Chicago, 560 U.S. 205, 211 (2010), and discrete act claims versus hostile work environment claims, National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

Disparate treatment claims encompass the traditional notions of workplace discrimination and unfair treatment, such as one employee being promoted over another more qualified employee of a different race. Lewis, 560 U.S. at 211. In contrast, disparate impact claims encompass situations in which an employer relies on a facially fair practice

4

that results in a present discriminatory effect, such as a height requirement for a certain position that effectively excludes most women, but not many men, from consideration. Id. at 212. To succeed on a disparate treatment claim, a plaintiff must "demonstrate deliberate discrimination within the limitations period," while a disparate impact claim requires no such showing, because it requires no showing of discriminatory intent at all. Id. at 214-15.

A plaintiff with a disparate treatment claim based on a discrete act of discrimination must prove that the discrete act occurred within the applicable limitations period. Morgan, 536 U.S. 101, 113. Each discrete act is actionable on its own and consists of an easy-to-pinpoint incident, such as a firing, failure to promote or hire, or formal disciplinary action. Id. at 114. Such a discrete act is no longer actionable under Title VII once the applicable time limit has passed, *even if it is related to a later action from which a timely complaint is then charged*. Id. at 113. In contrast, a hostile work environment claim is based on the "cumulative effect of individual acts[,]" each of which may or may not be actionable on its own. Id. at 115. Accordingly, so long as one act contributing to the claim occurs within the filing period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability[,]" as it culminates into one unlawful employment practice. Id. at 117.

It is clear to the undersigned that while Plaintiff identifies October 18, 2011 as the date of discrimination on his Title VII Complaint form, the adverse action he is referring to is the Letter of Reprimand he received in 2008.[2] Construing the Complaint liberally and in favor of the *pro se* Plaintiff, Plaintiff's argument is essentially that he was discriminated

---

[2] This is apparently less clear to Defendant, who continues to argue that Plaintiff is attempting to allege an adverse action occurring in 2011 based on the other employee's non-discipline, despite Plaintiff's clarification that "[t]he adverse action was in 2008, but the limitations period was effectively extended to 2011." (Docket Entry No. 17 at 3).

5

against when he was disciplined in 2008, but that he was not aware, and could not have been aware, that the motivation behind this discipline was discriminatory until 2011, at which point he should have been free to first complain of discrimination. (Docket Entry No. 17 at 3).

Accordingly, the undersigned finds Plaintiff's claim to be one of a discrete act, as Plaintiff alleges no actions other than the LOR that might point toward a hostile environment, and of disparate treatment, as the Plaintiff presents the discipline as unfair relative to the non-discipline, and notes no specific employment practice that caused any disparate impact. (Docket Entry No. 1 at 2-3). Categorized as such, the issue here is one of timeliness, as Plaintiff failed to initiate contact with an EEO Counselor within 45 days of the receipt of the LOR. In fact, according to Plaintiff, he first contacted an EEO Counselor concerning the LOR in 2011, more than three years after the LOR was issued. (Docket Entry No. 23 at 1). Plaintiff disagrees with this interpretation, insisting that he filed shortly after becoming aware of the discrimination in 2011. (Docket Entry No. 17 at 3). However, even if he could tie in the LOR to the 2011 incident, it would still not make his claim timely, according to the Morgan analysis, 536 U.S. at 133, inasmuch as his cause of action accrued, and the statute of limitations began to run, at the time the LOR was issued. See., e.g., EEOC v. United Parcel Serv., 249 F.3d 557, 561-62 (6th Cir. 2001).

(3) Equitable Tolling

The undersigned reads Plaintiff's timeliness argument as one for equitable tolling of the statute of limitations: the limitations period should not begin to run at the time of the action, but at the time the discriminatory motivation for the action became apparent to the Plaintiff. A similar argument was made to the Sixth Circuit Court of Appeals by the

6

employee-plaintiff in Amini v. Oberlin College, 259 F.3d 493, 499 (6th Cir. 2001), a case similar to the one at hand, though far simpler because it lacks the convoluted administrative background.

In Amini, the plaintiff, a 45-year-old Muslim man from Iran, applied for a faculty position with the defendant college. Id. at 496. A few months later, he received a letter (Denial Letter) from the college that notified him the position had been filled, but did not specify the person hired to fill it. Id. Over the next few months, plaintiff made multiple attempts to discover who had been hired for the position that consisted of one visit to campus and several visits to the defendant's website. Id. Seven months after the plaintiff received notice that the position had been filled, he visited the website once more and first discovered that a younger, white male with less experience than the plaintiff had been the candidate hired to fill the position. Id. Suspecting that he had been discriminated against on the basis of his age and ethnicity, the plaintiff filed a complaint with the EEOC three months later. Id. at 497. The EEOC dismissed this claim as untimely, citing the lapse in time between the plaintiff's receipt of the Denial Letter and his formal complaint, and plaintiff promptly filed a civil action alleging a violation of Title VII, among other claims. Id.

After the district court dismissed the complaint as untimely, the plaintiff appealed, arguing that rather than at the time he received the Denial Letter, the statute of limitations should have begun to run at the time he learned who had been hired and first had reason to suspect discrimination. Id. at 498. The appeals court categorized this as an argument for equitable tolling, emphasizing that the precedent was to start the clock on the statute of limitations at the time the plaintiff learned of the employment decision itself and not at the time the plaintiff learned that the motivation for that decision might have been

7

discriminatory. Id. at 498-99 (citing EEOC v. United Parcel Serv., Inc., 249 F.3d 557, 561-62 (6th Cir. 2001)). The court noted that, contrary to the plaintiff's argument, the only logical interpretation of the facts upon application of the law was that he had "learned of his injury" when he found out he would not be hired, at which point his discrimination claim accrued. Id. at 500. The Plaintiff's attempt to stop the clock from running until enough facts were discovered for him to suspect discrimination was thus treated as a request for equitable tolling. Id.

     As the court in Amini explained, the time restrictions on filing an EEOC complaint are subject to equitable tolling. Id. However, the Sixth Circuit "has repeatedly cautioned that equitable tolling relief should be granted only sparingly." Id. (citations omitted). The decision whether to grant equitable tolling should be made on a case-by-case basis, and generally, five factors are to be considered: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim." Id. (citing Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998)). Finding none of the factors to weigh heavily on the side of granting equitable tolling, and further noting that in contrast to most successful requests for such relief, the plaintiff had not alleged any misrepresentation or wrongdoing on the part of the defendant to prevent him from filing in a timely fashion, the court in Amini denied the plaintiff's request for equitable tolling. Id. at 501. The court explained that in order to promote the policy interests in protecting employers from vulnerability to suits based on years-old acts, equitable tolling simply cannot be granted solely on the basis of allowing the plaintiff more time to uncover discriminatory motives. Id. at 502.

Applying the equitable tolling factors and the <u>Amini</u> analysis to the case at hand, the undersigned similarly sees no reason to grant equitable tolling to the Plaintiff, beyond allowing him more time to uncover discriminatory motivation behind the 2008 discipline. The Complaint indicates that Plaintiff had notice and constructive knowledge of the time requirements, even if he disagrees about when the clock should start. Furthermore, though the TSA clearly bungled the handling of his first attempted retaliation complaint regarding the LOR, it does not appear that any related wrongdoing would have prevented Plaintiff from timely filing a discrimination claim over the same incident. Finally, though Plaintiff's first claim regarding the LOR indicates his interest in protecting his rights, he did not classify the alleged violation as discrimination until 2011, and crucially, he failed to pursue the issue further, administratively or otherwise, between the Final Decision issued in January 2010 and the new claim in October 2011. This period of inactivity simply does not resemble the type of diligent approach that might support an argument for equitable tolling.

(4) Conclusion

In view of Plaintiff's allegations of a discrete act of disparate treatment discrimination, it is clear that the statute of limitations began running at the time he received the Letter of Reprimand. Accordingly, Plaintiff's argument that he timely filed upon discovering the potentially discriminatory motive for the discipline is viewed as a request for the equitable tolling of the limitations period. Absent any compelling theories with which to support this request beyond the time it took for a discriminatory motive to be revealed, the undersigned does not believe equitable tolling is called for in the case at hand.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the Defendant's Motion to Dismiss be GRANTED, and that the Complaint be DISMISSED. Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from the receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140, 153 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 24th day of July, 2014.

<u>s/ John S. Bryant</u>
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE